**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. _____

BURGER KING COMPANY LLC, a Florida
Corporation,

      Plaintiff,

v.

CONSOLIDATED BURGER HOLDINGS,
LLC, a Delaware Limited Liability Company,
CONSOLIDATED BURGER A, LLC, a
Delaware Limited Liability Company, and
CONSOLIDATED BURGER B, a Delaware
Limited Liability Company, PARENT
CONSOLIDATED BURGER, LLC, a
Delaware limited liability company, and LEE
BAUGHER,

      Defendants.

_____/

## **COMPLAINT**

Plaintiff, Burger King Company LLC ("BKC") files this Complaint and sues Defendants Consolidated Burger Holdings, LLC ("CBH"), Consolidated Burger A, LLC ("CBA"), Consolidated Burger B, LLC ("CBB"), Parent Consolidated Burger Holdings, LLC ("Parent CBH"), and Lee Baugher ("Baugher") (collectively, "Defendants") and states:

1.    This is an action to enjoin Defendants' unauthorized use of BKC's valuable trademarks and service marks in connection with their unlawful operation of restaurants as authorized BURGER KING ® restaurants, as well as for damages under the Lanham Act and the agreements between the parties.

### I.    **THE PARTIES**

2.    Plaintiff Burger King Company LLC is a Florida limited liability company with its

principal place of business in Miami, Florida.

3.     Upon information and belief, Defendant Consolidated Burger A, LLC is a Delaware limited liability company with its principal place of business in Destin, Florida.

4.     Upon information and belief, Defendant Consolidated Burger B, LLC is a Delaware limited liability company with its principal place of business in Destin, Florida.

5.     Upon information and belief, Defendant Consolidated Burger Holdings, LLC is a Delaware limited liability company with its principal place of business in Greenwich, Connecticut.

6.     Upon information and belief, Defendant Parent Consolidated Burger, LLC is a Delaware limited liability company with its principal place in Greenwich, Connecticut.

7.     Upon information and belief, Defendant Lee Baugher is a citizen and resident of the State of Kentucky.

## II.     JURISDICTION AND VENUE

8.     BKC operates and franchises restaurants throughout the world, including the United States. Founded over 65 years ago, BKC has approximately 20,000 franchised restaurants in the world.

9.     BKC's franchise operations are conducted and supervised from its world headquarters located in Miami, Florida. BKC and Defendants have carried on a continuous course of direct communications by mail, e-mail, and by telephone through BKC's headquarters in Miami, Florida.

10.     The course of dealing between BKC and its franchisees, including Defendants, shows that decision-making authority is vested in BKC's headquarters in Miami, Florida.

11.     Defendants have breached a contract which was to be performed in Florida due to their failure to cease use of the BURGER KING® trademarks and system after certain franchise

agreements expired or were terminated. These breaches have caused damage to BKC at its headquarters in Miami, Florida.

12.     This Court has jurisdiction over this action based upon:

    a.     Section 39 of the Lanham Act, 15 U.S.C. § 1121, and 28 U.S.C. §§ 1331, 1337, and 1338(a), for the claims arising out of Defendants' violations of Sections 32, and 43(a) of the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a);

    b.     28 U.S.C. § 1338(b), and the doctrine of supplemental jurisdiction as codified in 28 U.S.C. § 1367, for the claims arising out of Defendants' breach of contract and common law unfair competition.

13.     Venue is proper in this Southern District of Florida pursuant to 28 U.S.C. § 1391 and the forum selection clause agreed to by the parties in their written agreement.

14.     BKC has engaged undersigned counsel and has agreed to pay counsel reasonable attorneys' fees for all services rendered in this action and otherwise in connection with enforcing the agreements between BKC and Defendants.

### III.     FACTUAL BACKGROUND

#### A.     The BKC Marks

15.     To identify the source, origin and sponsorship of BKC's facilities, products, and services, BKC has extensively employed, caused to be advertised and publicized throughout the United States (and elsewhere) certain distinctive symbols as trademarks and service marks (the "Marks"). BKC owns and was the first to adopt and use the Marks as trademarks and services marks and all right, title, and interest in and to the Marks and the design, décor, and image of BURGER KING® restaurants remains vested solely in BKC in Miami, Florida.

16.     BKC operates and franchises BURGER KING® restaurants using the Marks on

3

signs, menu boards, posters, uniforms, packaging, cups, and other items in advertising to the public through television, print media, and the internet.

17.    Set forth below is an abbreviated listing of the Marks registered to BKC in the United States Patent and Trademark Office:

| Trademark | Status | Application Number | Application Date | Registration Number | Registration Date | Class |
|---|---|---|---|---|---|---|
| BK | Registered | 77/975676 | 08/10/2007 | 3476576 | 07/29/2008 | 09, 29, 30, 32, 36 |
| BK | Registered | 77/252106 | 08/10/2007 | 3534987 | 11/18/2008 | 29 |
| BK | Registered | 76/484750 | 01/24/2003 | 2790924 | 12/09/2003 | 43 |
| BURGER KING | Registered | 72/306090 | 09/09/1968 | 869775 | 05/20/1969 | 29, 32 |
| BURGER KING | Registered | 77/128236 | 03/12/2007 | 3355280 | 12/18/2007 | 43 |
| BURGER KING & Crescent Design | Registered | 75/655962 | 03/08/1999 | 2428846 | 02/13/2001 | 42 |
| BURGER KING & Crescent Design | Registered | 76/468010 | 11/12/2002 | 2755927 | 08/26/2003 | 43 |
| BURGER KING & Hamburger Design | Registered | 75/437867 | 02/20/1998 | 2262585 | 07/20/1999 | 14, 25 |
| BURGER KING & Hamburger Design | Registered | 72/328416 | 05/27/1969 | 901311 | 10/20/1970 | 42 |
| BURGER KING & Hamburger Design (Color, Red & Orange) | Registered | 73/076655 | 02/09/1976 | 1057250 | 01/25/1977 | 42 |
| BURGER KING & Hamburger Refresh Design | Registered | 88/896710 | 05/01/2020 | 6397840 | 06/22/2021 | 29, 30, 43 |
| BURGER KING & Hamburger Refresh Design (color) | Registered | 88/896712 | 05/01/2020 | 6397841 | 06/22/2021 | 29, 30, 43 |
| BURGER KING YOUR WAY & Hamburger Refresh | Registered | 90/393367 | 12/18/2020 | 6702821 | 04/12/2022 | 43 |

4

| Trademark | Status | Application Number | Application Date | Registration Number | Registration Date | Class |
|-----------|--------|--------------------|--------------------|--------------------|--------------------|-------|
| **BURGER KING YOUR WAY** | | | | | | |
| HAVE IT YOUR WAY | Registered | 72/413798 | 01/26/1972 | 961016 | 06/12/1973 | 30, 42 |
| HAVE IT YOUR WAY (Stylized) **Have it your way** | Registered | 73/070797 | 12/04/1975 | 1081348 | 01/03/1978 | 42 |
| HOME OF THE WHOPPER | Registered | 72/098429 | 06/06/1960 | 782990 | 01/05/1965 | 42 |
| KING JR | Registered | 86/824915 | 11/18/2015 | 5392316 | 01/30/2018 | 29, 30, 43 |
| WHOPPER | Registered | 72/306089 | 09/09/1968 | 899775 | 09/29/1970 | 29 |
| WHOPPER | Registered | 77/819630 | 09/03/2009 | 3736973 | 01/12/2010 | 30 |
| WHOPPER | Registered | 77/792219 | 07/29/2009 | 3736954 | 01/12/2010 | 43 |

18.     The registration of the Marks are currently in full force and effect, and BKC has given notice to the public of the registration of the Marks as provided in 15 U.S.C. § 1111.

19.     Pursuant to franchise agreements between BKC and its franchisees, including Defendants, BKC grants its franchisees a limited license and authority to use and display the Marks, but only in such manner and at such locations and times as are expressly authorized by BKC.

20.     In no event is a franchisee authorized to use the Marks after the expiration of termination of its franchise. Such unauthorized use is expressly prohibited under the terms of the BKC franchise agreements, including the Defendants' agreements with BKC.

21.     BKC and its franchisees have spent many millions of dollars in the United States and abroad advertising and promoting BURGER KING® restaurants, services, and products.

22.     The substantial investment made in the Marks has resulted in valuable goodwill for the Marks in the United States and elsewhere and for the restaurants, products, and services bearing those Marks. BKC's products and services have met with popular approval and, as a result of BKC's extensive sales, advertising, promotion, and publicity, the public throughout the world is

familiar with the Marks. The products and services associated with the Marks are understood by the public to be produced, marketed, sponsored, supplied by and/or affiliated with BKC.

**B.      The Burger King System**

23.      BKC has developed a comprehensive restaurant operating system (the "System") for all BKC franchisees worldwide in order to protect the image of the BURGER KING® restaurants and to ensure uniform, high-quality standards. The detailed "Brand Standard and Procedures" of the System are set forth in BKC's Operating Standards Manual (the "OPS Manual").

24.      Every BKC franchisee is required by its agreement to operate its licensed restaurant in accordance with the OPS Manual. The OPS Manual sets forth in detail the mandatory BURGER KING® restaurant operating standards, specifications, and procedures, including rules governing areas such as food preparation, handling, cleanliness, health, sanitation, quality, and speed of service. In addition to these strict quality, service, and cleanliness requirements, the OPS Manual prescribed specified training procedures to ensure that these requirements are met. The OPS Manual contains confidential BKC information, which a franchisee is permitted to have only during the term of the franchise agreement.

25.      BKC offers a broad range of services to its franchisees in order to monitor and assist a franchisee's compliance with these standards. This enables BKC to safeguard the integrity of BURGER KING® restaurants, the System, and the Marks.

26.      Integral to BKC's compliance and assistance program are period inspections and consultation undertaken by personnel specially trained to observe and advise in all areas of restaurant operating procedure.

27.      As a result of its substantial expenditures of money and effort in developing and

implementing the System, BKC has established a high reputation and positive image with the public as to the quality of products and services available at BURGER KING® restaurants, which reputation and image have been, and continue to be, valuable assets of BKC. BKC strives to maintain that reputation through its careful selection of franchise owners, facilities and locations, and its careful supervision over the manner and quality of its restaurant service.

      **C.**      **Relevant Facts**

28.      On or about June 1, 2018, Defendants acquired approximately 66 BURGER KING® restaurants from a prior BURGER KING® franchisee.

29.      Ten of those restaurants, specifically BK #82, BK #307, BK #1684, BK #2993, BK #3697, BK #5049, BK #5557, BK #6621, BK #9360, and BK #17461 (the "Restaurants"), are the subject of this Complaint.

30.      By way of background, there are two sets of circumstances relevant to this Complaint. First, certain of the Restaurants are the subject of Notices of Default and subsequent termination for failure to meet remodel deadlines as outlined in the parties' agreements. Those restaurants include BK #82, BK #1684, BK #5557, BK #6621, and BK #17461. Second, certain other of the Restaurants have expired agreements, and yet despite the expiration of same, Defendants fail to cease operations and close the restaurants. Those restaurants include BK #307, BK #2993, BK #3697, BK #5049, and BK #9360. The circumstances of both are set forth below.

      **1.**      **The Parties' Agreements and Remodel Deadlines**

31.      As a result of Defendants' acquisition of the 66 BURGER KING® restaurants from a prior BURGER KING® franchisee, CBA and CBB each procured five (5) franchise agreements, for a total of ten (10) locations that are relevant this lawsuit, pursuant to which each acquired the right to own and operate the Restaurants (the "Franchise Agreements").

7

32.     Specifically, on June 1, 2018, CBA executed BURGER KING® Franchise Agreements to own and operate BK #1684, BK #5557, and BK #6621 for the balance of the terms in the prior franchisees' franchise agreements, and CBB executed BURGER KING® Franchise Agreements to own and operate BK #82, BK #2993, and BK #17461 for the balance of the terms in the prior franchisee's franchise agreements.

33.     Additionally, as part of the acquisition, on June 1, 2018, CBA was specifically assigned the BURGER KING® Franchise Agreements from the prior franchisees for BK #307 and BK #5049, and CBB was specifically assigned the BURGER KING® Franchise Agreements from the prior franchisee for BK #3697 and BK #9360.

34.     Pursuant to the terms of the Franchise Agreements, Defendants had certain remodel obligations for the Restaurants that were set forth therein. The remodel deadlines were relevant to Defendants' right to successor locations as the Franchise Agreements expired and/or otherwise has fixed remodel deadlines.

35.     Specifically, pursuant to Section 17.B.(4) of the Franchise Agreements, in order to be eligible for a Successor Franchise Agreement, the Franchise Agreements require that:

> Franchisee shall have completed, not more than three (3) years and not less than three (3) months prior to the expiration of the Term of this Agreement, the improvements, alterations, remodeling or rebuilding of the interior and exterior of the Franchised Restaurant so as to reflect the then Current Image of BURGER KING Restaurants, pursuant to such plans and specifications as BKC reasonably approves.

36.     The Franchise Agreements further state that Defendants would be in default under the terms and conditions of the Franchise Agreements if Defendants failed to make all improvements, alterations, or remodelings as may be determined by BKC to be reasonably necessary to reflect BKC's current image.

37.     Moreover, simultaneous with the execution of five of the Franchise Agreements,

CBA executed Deferred Remodel Addenda to the Franchise Agreements for BK #1684, BK #5557, and BK #6621, and CBB executed Deferred Remodel Addenda to the Franchise Agreements for BK #82 and BK #17461 (each a "Deferred Remodel Addendum," and collectively the "Deferred Remodel Addenda"). The Deferred Remodel Addenda modified certain remodel deadlines in the Franchise Agreements.

38.    Specifically, as set forth in paragraph 2 of the Deferred Remodel Addenda, the deadline to remodel BK #82 and BK #6621 was November 30, 2018, the deadline to remodel BK #1684 was November 30, 2019, and the deadline to remodel BK #5557 and BK #17461 was November 30, 2020.

39.    The Restaurants' number, location, Franchise Agreement commencement date, Franchise Agreement expiration date, and remodel deadlines are set forth below:

| BKC Restaurant No. | Location | Commencement Date of Franchise Agreement | Expiration Date of Franchise Agreement | Remodel Deadline in Franchise Agreement |
|---|---|---|---|---|
| 82 | 3796 Congress Ave. South Lake Worth, FL 33461 | June 1, 2018 | September 18, 2032 | November 30, 2018 |
| 307 | 1801 North Ashley Street Valdosta, GA 31602 | June 10, 2002 | June 9, 2022 | March 9, 2022 |
| 1684 | 198 W. James Lee Blvd. Crestview, FL 32536 | June 1, 2018 | May 13, 2027 | November 30, 2019 |
| 2993 | 9031 Old Dixie Highway Lake Park, FL 33403 | June 1, 2018 | February 28, 2023 | November 28, 2022 |
| 3697 | 8175 Glades Road Boca Raton, FL 33434 | September 19, 2012 | May 20, 2023 | February 20, 2023 |
| 5049 | 11213 Front Beach Road Panama City Beach, FL 32407 | June 30, 2002 | June 29, 2022 | March 29, 2022 |
| 5557 | 751 Hwy 98 East Destin, FL 32451 | June 1, 2018 | May 18, 2027 | November 30, 2020 |
| 6621 | 1303 US Hwy 331 South Defuniak Springs, FL 32435 | June 1, 2018 | November 1, 2029 | November 30, 2018 |
| 9360 | 1721 Belvedere Road West Palm Beach, FL 33406 | September 18, 2012 | December 12, 2023 | September 12, 2023 |
| 17461 | 1760 S. Military Trail West Palm Beach, FL 33415 | June 1, 2018 | September 29, 2029 | November 30, 2020 |

40.    Additionally, CBH, Parent CBH, and Baugher irrevocably and unconditionally

guaranteed the performance of each and every obligation of CBB under the Franchise Agreements, pursuant to a Conditional Consent to Assignment of Franchise Agreements and Leases dated June 1, 2018, as well as Owner Guarantees with respect to particular locations.

41.     Specifically, in addition to the Conditional Consent to Assignment of Franchise Agreements and Leases, on June 1, 2018, CBH, Parent CBH, and Baugher entered Owner's Guarantees for the following locations: BK #82, BK #1684, BK# 2993, BK#5557, BK #6621,  and BK # 17461.

### 2.     The 2018 Agreement

42.     Also in June 2018, as part of the acquisition, CBH and its parent company entered into an Area Development and Remodeling Agreement (the "2018 Agreement") with BKC.

43.     The 2018 Agreement provided, among other things, CBH with the non-exclusive right to develop, open and operate additional BURGER KING® restaurants in the Territory (as defined in the 2018 Agreement) pursuant to a development schedule within the 2018 Agreement.

44.     In addition, the 2018 Agreement reiterated the remodel deadlines set forth in the Franchise Agreements for certain of the Restaurants that are the subject of this Complaint, including BK # 82, BK #1684, BK #2993, BK #5557, BK #6621, and BK #17461.

45.     The purpose of including remodel deadlines in the 2018 Agreement was to allow BKC to declare a default of the 2018 Agreement if the remodel deadlines set forth in the Franchise Agreements were not met.

### 3.     The 2019 Agreement

46.     Thereafter, on December 5, 2019, the parties entered into a Remodel Agreement (the "2019 Agreement"). The 2019 Agreement was a system-wide initiative, which offered franchisees certain incentives to complete Burger King of Tomorrow Remodels ("BKOT

Remodels") at certain BURGER KING® restaurants. Those incentives included reduced royalties, among others.

47.     The 2019 Agreement provided remodel deadlines for certain of Defendants' Restaurants, including BK #82, BK #1684, BK #2993, BK #5049, BK #5557, BK #6621, and BK #17461, if Defendants proceeded with the BKOT Remodel program. The relevant BKOT Remodel deadlines are set forth below:

| BKC Restaurant No. | 2019 Extended Remodel Deadline |
| --- | --- |
| 82 | December 31, 2020 |
| 1684 | December 31, 2021 |
| 2993 | December 31, 2022 |
| 5049 | December 31, 2022 |
| 5557 | December 31, 2022 |
| 6621 | December 31, 2022 |
| 17461 | December 31, 2022 |

48.     Then, in September 2020, due to the COVID-19 pandemic, BKC announced that all remodel obligations that were due in 2020 would be extended into 2021. Accordingly, the updated remodel deadline for BK #82 was September 30, 2021.

49.     Despite the COVID-19 extension, Defendants did not proceed with the BKOT Remodel program with regard to BK #82, BK #1684, BK #2993, BK #5049, BK#5557, BK #6621, and BK #17461 and failed to meet the BKOT Remodel deadlines set forth in the 2019 Agreement, including the postponed deadline due to the COVID-19 pandemic.

50.     The 2019 Agreement expired on December 31, 2021.

51.     Thus, because Defendants chose not to proceed with the BKOT Remodel program, the deadlines set forth in the Franchise Agreements and Deferred Remodel Addenda, as set forth

above, applied to Defendants.

52.     Put simply, the 2019 Agreement did not supplant the remodel obligations and deadlines set forth in the Restaurants' Franchise Agreements and Deferred Remodel Addenda.

53.     Thereafter, the parties attempted to resolve the issues with regard to the remodels, but were ultimately unable to do so.

     **4.**     **Notices of Default for BK #82, BK #1684, BK #5557, BK #6621, and BK #17461**

54.     Ultimately, Defendants failed to meet the remodel deadlines set forth in the Deferred Remodel Addenda for BK #82, BK #1684, BK #5557, BK #6621, and BK #17461.

55.     Thus, on September 11, 2023, with respect to BK #82 and BK #17461, and on November 22, 2023, with respect to BK #1684, BK #5557, and BK #6621, BKC issued Notices of Default to Defendants (the "Notices of Default") for their failure to meet their remodel obligations under the Deferred Remodel Addenda.

56.     The Notices of Default provided Defendants with thirty (30) days from delivery of the Notices of Default to cure the remodel defaults.

57.     Defendants failed to cure the remodel defaults within the applicable cure period.

58.     Accordingly, by letter dated November 21, 2023, BKC sent Defendants a letter confirming that the Franchise Agreements for BK #82 and BK #17461 had been terminated, and by letter dated January 3, 2024, BKC sent Defendants a letter confirming that the Franchise Agreements for BK #1684, BK #5557 and BK #6621 had been terminated, and demanding that Defendants comply with their post-termination obligations under the Franchise Agreements (the "Confirmation of Termination and Demand for Compliance").

59.     As of the date of the filing of this Complaint and in violation of the Franchise Agreements, Defendants continue to hold themselves out to the public as owning and operating

genuine and authorized BURGER KING® restaurants by continuing to use the Marks at BK #82, BK #1684, BK #5557, BK #6621, and BK #17461.

60.     In so doing, Defendants are infringing upon the Marks and breaching their explicit obligations under the Franchise Agreements.

### 5.     Expiration of Franchise Agreements for BK #307, BK#2993, BK #3697, BK #5049, and BK #9360

61.     Additionally, while the parties were negotiating resolution of the issues relating to the remodels, certain of the Restaurants' Franchise Agreements expired. Those restaurants included BK #307, BK #2993, BK #3697, BK #5049, and BK #9360.

62.     On November 21, 2023, BKC sent Notices of Non-Successor of BURGER KING® Agreement to Defendants for BK #2993, BK #3697, and BK #9360, and on January 3, 2024, BKC sent Notices of Non-Successor BURGER KING® Agreement to Defendants for BK #307, and BK #5049 (the "Non-Successor Notices").

63.     In pertinent part, the Non-Successor Notices stated that: (1) each Franchise Agreement had expired; and/or (2) Defendants failed to complete remodels by the deadline set forth in the Franchise Agreements, and therefore, pursuant to Section 17.B.(4) of the Franchise Agreements, the Defendants had no right to renew or obtain a Successor Franchise Agreement, and that the prior Franchise Agreements had expired.

64.     Additionally, Defendants failed to give the requisite notice of their intent to renew the Franchise Agreements for BK #307, BK #2993, BK #3697, BK #5049, and BK #9360, as required by Section 17 of the Franchise Agreements.

65.     Accordingly, Defendants had no right to renew the Franchise Agreements for BK #307, BK #2993, BK #3697, BK #5049, and BK #9360, and the Franchise Agreements for each location expired. Defendants were therefore required to close the locations upon receipt of the

Non-Successor Notice and comply with all post-termination covenants set forth in the Franchise Agreements.

66.     Despite BKC's demands, Defendants continue to hold themselves out to the public as owning and operating genuine and authorized BURGER KING® restaurants by continuing to use the Marks at the locations.

67.     In so doing, Defendants are infringing upon the Marks and breaching their explicit obligations under the Franchise Agreements.

68.     BKC has demanded that Defendants comply with their post-termination obligations, but Defendants have refused and continue to unlawfully operate the Restaurants without a Franchise Agreement.

**D.      Obligations Upon Termination and Expiration of the Franchise Agreements**

69.     Terminated and expired franchisees, such as Defendants, are prohibited from identifying themselves as either current or former BURGER KING® franchisees, from using any of BKC's trade secrets, promotional materials, the Marks, or any mark confusingly similar.

70.     Terminated and expired franchisees are further required, upon termination or expiration of their BURGER KING® franchise agreement(s), to immediately make such removals or changes in signs and the building as BKC shall request so as to effectively distinguish the building and premises from its former appearance and from any other BURGER KING® restaurant.

71.     In light of these obligations under the Franchise Agreements, Defendants cannot continue to hold themselves out to the public as operating genuine and authorized BURGER KING® restaurants by continuing to use the Marks at the Restaurants subsequent to the Franchise Agreements' termination or expiration.

72.    In so doing, Defendants are infringing upon the Marks and breaching their explicit obligations under the Franchise Agreements.

**E.**    **Likelihood of Consumer Confusion and Deception**

73.    Despite the termination and expiration of the Franchise Agreements, Defendants have not tendered to BKC or removed all BURGER KING® signs, logos, menu boards, posters, translights, uniforms, plates, cups, tray liners, and other items bearing the Marks, name, symbols, or slogans, or which are otherwise identified with BURGER KING® restaurants and are located at the Restaurants.

74.    Defendants' continued use and display of the Marks or any items associated with the BURGER KING® name, symbols or slogans at the Restaurants is without BKC's license or consent.

75.    Upon seeing the familiar Marks, through Defendants' unauthorized display thereof, consumers will be deceived into concluding that the Restaurants are sponsored or endorsed by BKC, and bear the Marks pursuant to BKC's authority and permission.

76.    Such impressions are calculated to and will have a material influence on customers' purchasing decisions, as well as BKC's goodwill, reputation, and appeal.

77.    By reason of the foregoing, BKC has suffered damages in an amount presently unknown yet substantial.

78.    BKC no longer is the source or sponsor of the Restaurants and does not endorse said Restaurants, or the products and services provided therein, has not authorized Defendants to use the Marks to identify the terminated or expired franchise facilities, products, or services and has protested expressly against such use.

79.    By virtue of termination and expiration of the Franchise Agreements, BKC is

unable to control the nature and quality of the goods and services that Defendants provide at the Restaurants.

80.     BKC will suffer serious, immediate, and irreparable harm if Defendants' willful infringement of the Marks at the Restaurants is not immediately enjoined. BKC's goodwill and reputation will suffer drastically by virtue of the public's identification of BKC with the management and operation of Restaurants.

81.     BKC exercises strict quality control over every phase in the marketing of BURGER KING® products and services, from specification of ingredients, to the supervision of food preparation and handling, to the maintenance of strict standards as to cleanliness, health, sanitation, and quality of service. The carefully nurtured image which BKC now enjoys will be irretrievably injured by any association with the Restaurants, which are no longer subject to BKC's control and supervision.

82.     Defendants' sale of products and services under the Marks at the Restaurants poses an immediate threat to the distinct, exclusive image BKC has created at great expense for its franchisees. BURGER KING® restaurants, services, and products are known by the Marks which are emblematic of their distinctive source. BURGER KING® restaurants enjoy a special appeal to consumers which will be diluted by the existence of infringing restaurants with products and services bearing the distinctive Marks. The intangible, but commercially indispensable, value that BURGER KING® restaurants now enjoy will be severely undermined by the operation of the Restaurants, which make authorized use of the Marks.

83.     Consumer confusion as to the source or sponsorship of the Restaurants bearing the Marks will be attended not only by an inevitable loss of product distinctiveness, image, and goodwill, but also will cause a diversion from sales from BKC. The economic injury to BKC

16

resulting from such diversion is incalculable, and as such, is an additional source of irreparable harm.

84. All conditions precedent to the institution of this action have been satisfied, discharged, excused, and/or waived.

**COUNT I – LANHAM ACT INFRINGEMENT**
**(Against All Defendants)**

85. BKC re-alleges and incorporates Paragraphs 1 through 84 above as if fully set forth herein.

86. Defendants' acts constitute infringement of BKC's registered trademarks and service marks in violation of Section 32 of Lanham Act, 15 U.S.C. § 1114.

**COUNT II – LANHAM ACT FALSE DESIGNATIONS**
**(Against All Defendants)**

87. BKC re-alleges and incorporates Paragraphs 1 through 84 above as if fully set forth herein.

88. Defendants' acts constitute false designations of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

**COUNT III – COMMON LAW TRADEMARK INFRINGEMENT**
**(Against All Defendants)**

89. BKC re-alleges and incorporates Paragraphs 1 through 84 above as if fully set forth herein.

90. Defendants' acts constitute unlawful trademark and service mark infringements under the common law.

**COUNT IV – COMMON LAW UNFAIR COMPETITION**
**(Against All Defendants)**

91. BKC re-alleges and incorporates Paragraphs 1 through 84 above as if fully set forth

herein.

92.     Defendants' acts constitute unfair competition under the common law.

## COUNT V – BREACH OF FRANCHISE AGREEMENT FOR BK #82
**(Against CBB)**

93.     BKC re-alleges and incorporates Paragraphs 1 through 84 above as if fully set forth herein.

94.     CBB has not complied with the post-termination obligations in the Franchise Agreement for BK #82 requiring, among other things, that CBB immediately cease and desist from use of all Marks at BK #82.

95.     These breaches have directly and proximately caused loss and damage to BKC.

## COUNT VI – BREACH OF FRANCHISE AGREEMENT FOR BK #2993
**(Against CBB)**

96.     BKC re-alleges and incorporates Paragraphs 1 through 84 above as if fully set forth herein.

97.     CBB has not complied with the post-termination obligations in the Franchise Agreement for BK #2993 requiring, among other things, that CBB immediately cease and desist from use of all Marks at BK #2993.

98.     These breaches have directly and proximately caused loss and damage to BKC.

## COUNT VII – BREACH OF FRANCHISE AGREEMENT FOR BK #3697
**(Against CBB)**

99.     BKC re-alleges and incorporates Paragraphs 1 through 84 above as if fully set forth herein.

100.     CBB has not complied with the post-termination obligations in the Franchise Agreement for BK #3697 requiring, among other things, that Defendants immediately cease and

desist from use of all Marks at BK #3697.

101.     These breaches have directly and proximately caused loss and damage to BKC.

### COUNT VIII – BREACH OF FRANCHISE AGREEMENT FOR BK #17461
**(Against CBB)**

102.     BKC re-alleges and incorporates Paragraphs 1 through 84 above as if fully set forth herein.

103.     CBB has not complied with the post-termination obligations in the Franchise Agreement for BKC #17461 requiring, among other things, that CBB immediately cease and desist from use of all Marks at BK #17461.

104.     These breaches have directly and proximately caused loss and damage to BKC.

### COUNT IX – BREACH OF FRANCHISE AGREEMENT FOR BK #9360
**(Against CBB)**

105.     BKC re-alleges and incorporates Paragraphs 1 through 84 above as if fully set forth herein.

106.     CBB has not complied with the post-termination obligations in the Franchise Agreement for BK #9360 requiring, among other things, that CBB immediately cease and desist from use of all Marks at BK #9360.

107.     These breaches have directly and proximately caused loss and damage to BKC.

### COUNT X – BREACH OF FRANCHISE AGREEMENT FOR BK #307
**(Against CBA)**

108.     BKC re-alleges and incorporates Paragraphs 1 through 84 above as if fully set forth herein.

109.     CBA has not complied with the post-termination obligations in the Franchise Agreement for BK #307 requiring, among other things, that CBA immediately cease and desist from use of all Marks at BK #307.

110.    These breaches have directly and proximately caused loss and damage to BKC.

### COUNT XI – BREACH OF FRANCHISE AGREEMENT FOR BK #1684
**(Against CBA)**

111.    BKC re-alleges and incorporates Paragraphs 1 through 84 above as if fully set forth herein.

112.    CBA has not complied with the post-termination obligations in the Franchise Agreement for BK #1684 requiring, among other things, that CBA immediately cease and desist from use of all Marks at BK #1684.

113.    These breaches have directly and proximately caused loss and damage to BKC.

### COUNT XII – BREACH OF FRANCHISE AGREEMENT FOR BK #5557
**(Against CBA)**

114.    BKC re-alleges and incorporates Paragraphs 1 through 84 above as if fully set forth herein.

115.    CBA has not complied with the post-termination obligations in the Franchise Agreement for BK #5557 requiring, among other things, that CBA immediately cease and desist from use of all Marks at BK #5557.

116.    These breaches have directly and proximately caused loss and damage to BKC.

### COUNT XIII – BREACH OF FRANCHISE AGREEMENT FOR BK #6621
**(Against CBA)**

117.    BKC re-alleges and incorporates Paragraphs 1 through 84 above as if fully set forth herein.

118.    CBA has not complied with the post-termination obligations in the Franchise Agreement for BK #6621 requiring, among other things, that CBA immediately cease and desist from use of all Marks at BK #6621.

119.    These breaches have directly and proximately caused loss and damage to BKC.

## COUNT XIV – BREACH OF GUARANTEES
### (Against CBH, Parent CBH, and Baugher)

120.     BKC re-alleges and incorporates Paragraphs 1 through 84 above as if fully set forth herein.

121.     Pursuant to the June 1, 2018 Conditional Consent to Assignment and certain Owner's Guarantees with respect to particular locations, CBH, Parent CBH, and Baugher, irrevocably and unconditionally guaranteed the performance of all obligations of CBA and CBB to BKC under the Franchise Agreements.

122.     CBH, Parent CBH, and Baugher have breached the guarantees by failing to comply with the post-termination obligations in the Franchise Agreements for the Restaurants requiring, among other things, that Defendants immediately cease and desist from use of all Marks at the Restaurants.

123.     These breaches have directly and proximately caused loss and damage to BKC.

## DEMAND FOR ATTORNEYS' FEES AND COSTS

The Franchise Agreements at issue in this litigation provide that the prevailing party is entitled to recover its attorneys' fees and costs. BKC hereby demands that it be reimbursed by Defendants for all costs and expenses (including attorneys' fees) relating to prosecution of this action.

## REQUEST FOR RELIEF

WHEREFORE, Burger King Company LLC demands judgment against Defendants Consolidated Burger A, LLC, Consolidated Burger B, LLC, Consolidated Burger Holdings, LLC, Parent Consolidated Burger Holdings, LLC, and Lee Baugher for:

1.       Preliminary and permanent injunctions enjoining Defendants, and all persons acting on their behalf, in concert with, or under their control, from:

(a)     manufacturing, packaging, distributing, selling, advertising, displaying, or promoting any product or service bearing any of the Marks, or any colorable imitation thereof at the Restaurants;

(b)     displaying or using any of the Marks to advertise or promote the sale of, or to identify, the Restaurants, or any product or service provided therein; and

(c)     making in any manner whatsoever any statement or representation, or performing any act, likely to lead members of the public to believe the Restaurants and the products and services provided therein, are in any manner, directly or indirectly, associated, affiliated, or connected with, or licensed, sponsored, authorized, or approved by BKC.

2.     Preliminary and permanent injunctions directing Defendants and all persons acting on their behalf, in concert with them, or under their control to:

(a)     recall and deliver to BKC all signs, banners, labeling, packaging, advertising, promotional display and point-of-purchase materials which bear, or make reference to, any of the Marks, or any colorable imitation of the Marks at the Restaurants;

(b)     recall and deliver up to BKC on all copies and editions of the Manual that are in their actual or constructive, direct or indirect, possession, custody or control, including all supplements and addenda thereto and all other materials containing restaurant operating instructions, restaurant business practices, or plans of BKC to the extent that there are any at the Restaurants;

(c)     allow BKC, at a reasonable time, to enter the premises of the Restaurants and make whatever changes, including removal of tangible assets, that are necessary to distinguish the premises from its appearance as a BURGER KING® restaurant, and;

(d)     account and pay over to BKC all gains, profits, and advantages derived by

them from any trademark and service mark infringement, breach of contract, and unfair competition to the full extent provided for by Section 35 of the Lanham Act, 15 U.S.C. §1117 and by the controlling principles of common law.

3.      Money damages, plus three times additional actual damages BKC has sustained by reason of Defendants' trademark and service mark infringement and unfair competition, pursuant to Section 35 of the Lanham Act, 15 U.S.C. § 1117;

4.      Punitive damages because of the willful nature of Defendants' actions;

5.      Pre-judgment interest and BKC's reasonable attorneys' fees incurred in protecting its rights in this action in accordance with the terms of the Franchise Agreements, and because of the willful nature of the infringement, pursuant to Section 35 of the Lanham Act, 15 U.S.C. § 1117;

6.      An order requiring Defendants from owning, operating, or having any interest in any hamburger business as defined in the Franchise Agreements, within a two-mile radius of the Restaurants for a one-year period;

7.      Compensatory damages, lost profits, and attorneys' fees and costs against Defendants' due to their breaches of the Franchise Agreements;

8.      An order directing Defendants to file with the Court, and to serve on BKC's counsel within ten days after service of any injunction or order issued herein, or within such a reasonable time as the Court shall direct, a report, in writing and under oath, setting forth in detail the manner in which they have complied with such injunction or order;

9.      All attorneys' fees, costs, disbursements, and expenses of this action; and

10.     All such other relief as this Court may deem just and proper.

VENABLE LLP
*Attorneys for Burger King Company LLC*
100 Southeast Second Street
Miami Tower, Suite 4400
Miami, Florida 33131
Telephone: (305) 349-2300
Facsimile: (305) 349-2310

By:     /s/ Michael D. Joblove
         Michael D. Joblove
         Florida Bar No.: 354147
         MDJoblove@Venable.com
         Elizabeth McIntosh
         Florida Bar No. 1011555
         EGMcIntosh@Venable.com